The BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT NO. 202, COOK COUNTY, ILLINOIS, et al., Plaintiffs,

v.

ADMIRAL HEATING AND VENTILATION, INC., an Illinois Corporation, et al., Defendants.

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 205, COOK COUNTY, ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

The STATE OF ILLINOIS et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

Nos. 79 C 3046, 79 C 3077 and 79 C 5253.

United States District Court, N. D. Illinois, E. D.

March 18, 1981.

---

William F. Crowley, Jr., James F. Gebhart, Coin, Crowley, Nord & Hilliker, Chicago, Ill., for plaintiffs.

Thomas E. Lindley, Karen B. Bragman, Jenner & Block, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs in these three consolidated[1] class actions charge 22 piping construction companies and 36 individuals with bid-rigging, price fixing and job allocation in the Chicago area from 1956 until 1977 in violation of the Sherman Act. Plaintiffs have moved for reconsideration of Magistrate Cooley's November 20, 1980 order denying plaintiffs' motion to compel discovery. For the reasons stated in this memorandum opinion and order, both plaintiffs' motion for reconsideration and their motion to compel are denied.

*Facts*

These civil actions stem from claims related to those in three criminal cases[2] in which a federal grand jury indicted numerous sheetmetal and piping construction companies and certain of their corporate officers for violations of Section 1 of the Sherman Act. Plaintiffs have made three currently-disputed document requests (the "Requests" covering the "grand jury materials") in these civil actions:

Request No. 3: "All documents submitted by the company to the Federal Grand Jury which returned the indictment in *United States v. Borg, Inc.,* ... and (a) each subpoena or other written request pursuant to which documents were fur-

---

1. As indicated, 79 C 5253 is consolidated for discovery purposes only.

2. *United States v. S. J. Reynolds, et al.,* 79 CR 66; *United States v. Borg, et al.,* 79 CR 67;

*United States v. Climatemp, et al.,* 78 CR 388. All litigation in those cases has been terminated.

nished; (b) all lists, memoranda and other documents submitted by the company in lieu of documents thus requested; (c) all documents submitted to the grand jury listing documents as to which any privilege was claimed, and any information with respect thereto called for in such subpoena or other reasonable request, and all documents identifying or describing such documents."

Request No. 6: "Copies of the grand jury transcript in *United States v. Borg, Inc.,* ... given to or in the possession of company for any purposes."

Request No. 7: "Copies of pre-sentencing memoranda tendered to the court in *United States v. Borg, Inc., ....*"

At about the same time plaintiffs also joined the State of Illinois (the "State") in its action before Chief Judge Parsons[3] seeking access to the following grand jury materials in possession of the Department of Justice Antitrust Division:

the transcript of the proceeding before the August, 1977 grand jury which returned indictments in 79 CR 66 and 79 CR 67; [and] all documents in possession of the Antitrust Division received pursuant to grand jury subpoena or by voluntary disclosure; [and] all presentencing memoranda and other documents and materials ....

When defendants refused to comply with the Requests, plaintiffs filed a motion before Magistrate Cooley to compel discovery. On September 2, 1980 Magistrate Cooley ruled in all matters before him other than the Requests. As to those he "reserved ruling ... pending Judge Parson's decision on motion regarding same subject matter."[4] Plaintiffs renewed their motion to compel discovery of the grand jury materials in October 1980, and on November 20, 1980 Magistrate Cooley denied that motion "without prejudice to plaintiffs renewing motion after Chief Judge Parsons' decision is issued on motion regarding same subject

matter." Plaintiffs then moved this Court to reconsider Magistrate Cooley's order denying discovery.

On January 8, 1981, while this motion was still being briefed by the parties, Chief Judge Parsons denied the petition before him for access to the grand jury materials. He concluded that neither Section 4F(b) of the Clayton Act nor Fed.R.Crim.P. ("Rule") 6(e) mandates release of the grand jury materials to the State and that petitioners (plaintiffs in this action, as well as the State) had failed to establish a "particularized need" for those materials, a prerequisite to authorization of their release. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

Plaintiffs' motion became fully briefed less than one month after Chief Judge Parsons issued his decision. In the interest of judicial economy and to avoid further delay, this Court will rule on the motion on the merits rather than re-referring it to the Magistrate for consideration.

### 1. *Plaintiffs' Document Request No. 3: Documents Submitted to the Grand Jury*

It is a truism that the effectiveness of grand jury proceedings is in large part dependent upon their secrecy. Witnesses are encouraged to testify freely by the promise that their testimony will be confidential. Grand jury proceedings are *ex parte* in nature. There is "no right to counsel, no right to confrontation, no right to cross examine or to introduce evidence in rebuttal and ordinarily no requirement that the evidence introduced be only such as would be admissible upon a trial." *United States v. Scully,* 225 F.2d 113, 116 (2d Cir. 1955), *cert. denied,* 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955).

Failure to protect the confidentiality of the proceedings could thus result in the disclosure of information either privileged

---

**3.** 80 C 088.

**4.** Because Magistrate Cooley simply *reserved* ruling, defendants' argument that plaintiffs'

motion is untimely under Rule 2.03 of the Magistrate Rules of this Court, because it was not filed within ten days of the September 2 order, is plainly untenable.

or of a damaging nature without affording the "injured parties" proper due process. *See generally* the *Procter & Gamble* case and *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). Nor do those considerations diminish in importance once the grand jury is dismissed and any trial completed, a concept confirmed by the fact that Rule 6(e)'s prohibition on disclosure of grand jury "proceedings" without court authorization is unlimited in time.

Request No. 3 encompasses all documents in defendants' possession that had been submitted to the grand jury, the subpoenas for such documents, documents submitted in lieu of the documents requested by the grand jury and any documents submitted asserting a privilege. Plaintiffs urge that the principle of confidentiality does not extend to that request because:

1. Plaintiffs ask only for materials now in defendants' possession and not in the possession of either the grand jury itself or the Antitrust Division.

2. All requested documents existed prior to the grand jury proceedings and were not a product of those proceedings. They should therefore not be insulated from discovery merely because the grand jury reviewed them.

3. By describing the materials as "grand jury materials" plaintiffs are "shortcutting" discovery—taking advantage of the grand jury's narrowing of requests to pertinent items—and thereby saving substantial expense that would be incurred should plaintiffs be forced to "reinvent the wheel."

4. In his order denying plaintiffs access to the materials (to the extent they were in the possession of the Antitrust Division), Judge Parsons expressly recognized the propriety of obtaining such access through civil discovery procedures.

Plaintiffs' position has some limited support in the cases.[5] *See Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D.Pa.1980); *In re Cement-Concrete Block Chicago Area Grand Jury Proceedings*, 1974–1 Trade Cases ¶ 75,131 (N.D.Ill.1974). Both those cases authorized civil discovery of "documents submitted to the grand jury," *so designated*, on the rationale that the documents "exist as an entity apart from the grand jury ... not reflect[ing] upon ... the deliberation or work of the grand jury." In *Golden Quality Ice Cream* the Court also commented that the prior assembly of materials for grand jury inspection would facilitate a reduction in the burden of making them available in the civil action.

Of course the documents plaintiffs seek are not rendered non-discoverable by their prior submission to the grand jury. Were that principle operative, defendants would be substantially immunized from civil liability if a grand jury were to gain access to all damaging documentary information. And as properly recognized in *Golden Quality Ice Cream* and *Cement-Concrete Block Proceedings*, the documents are not a product of the grand jury proceedings (as is grand jury testimony) but have significance independent of the grand jury. Discoverability of the documents need only meet the minimal standard of Fed.R.Civ.P. 26(b)(1).

But the relevant question before this Court is not discoverability as such. It is rather whether discovery should be compelled in the format plaintiffs seek: collected as they were before the grand jury (and in the case of Request No. 3, effectively "indexed" by the subpoenas and lists requested in addition to the documents themselves). In short, the issue is whether the request for grand jury materials, compiled in the manner that they were presented to the grand jury, violates the principles of grand jury secrecy.

On that question this Court finds the dictum in *United States v. Stanford*, 589 F.2d 285 (7th Cir. 1978) more persuasive than plaintiffs' authorities. In *Stanford*, a criminal case, the issue was whether docu-

---

5. That support, however, is a great deal less formidable than plaintiffs contend. Most of the cases on which they rely involved either sharp-

ly different (and not merely distinguishable) factual circumstances or undisputed disclosure orders.

ments considered by the grand jury could be released to governmental agents and disclosed to defendants without a court authorization under Rule 6(e).[6] Our Court of Appeals held that they could, quoting a Second Circuit opinion that when "data is sought for its own sake—for its intrinsic value in furtherance of a lawful investigation—rather than to learn what took place before a grand jury, it is not a valid defense to disclosure that the same documents had been, or were presently being, examined by a grand jury." *Id.* at 291. Then the Court said, in language strikingly apropos to the present case (*Id.* at 291 n.6, citations omitted):

> We do not mean to say that disclosure of documents is never subject to Rule 6(e) .... A general request for "all documents collected or received in connection with the investigation of antitrust violations ..." for example, would be in effect a disclosure of the grand jury proceedings; the documents are significant because they were before the grand jury.

Request No. 3 closely tracks the "general request" situation to which *Stanford* referred. In fact that request is not only for all documents submitted to the grand jury but for the subpoenas in response to which the documents were submitted as well. That fact of course adds to the danger recognized by the Court of Appeals, under which document disclosure effectively becomes a disclosure of grand jury proceedings.

*Stanford* is not to be distinguished because it did not involve, as does this case, discovery in a civil proceeding. Grand jury secrecy and its underlying policy are no less violated by unwarranted disclosure in a civil action than in any other context. Indeed the Court of Appeals cited, in support of its *Stanford* statement, *Corona Construction Co. v. Ampress Brick Co.*, 376 F.Supp. 598 (N.D.Ill.1974)—a *civil* proceeding in which Judge Bauer (then a member of the District Court) denied a request for "grand jury materials."

Plaintiffs can draw no added support from the fact that their request is directed to defendants rather than to the government. Grand jury confidentiality would be emasculated if a party seeking discovery of its proceedings could do so by routinely obtaining that information from potential (or as in this case actual) defendants.

Finally, plaintiffs should derive no comfort from the portion of Chief Judge Parsons' January 8 order that recognized the possibility of permissible civil discovery. Chief Judge Parsons' opinion, though treating a request addressed by petitioners to a different target, might well have been written for this case:

> "Finally, according to *Douglas*, petitioners should demonstrate that 'their request is structured to cover only [the] materials [they will actually need].' Petitioners have simply requested the release to them of all of the grand jury material. In their quest for information grand juries often acquire reams of documents and hours of testimony later to be found irrelevant to the investigation or the final charge. Its wholesale disclosure could be embarrassing, if not destructive of third parties or of unindicted individuals and corporations concerned when witnesses are called upon to testify or furnish evidence which involves them. This is one of the principal reasons why grand jurors are sworn to secrecy. It is the duty of the court in following 6(e) to protect from public scrutiny and injury such individuals and corporations. Petitioners after having done little more than filing a suit, seek an all-encompassing, unparticularized general type of full disclosure which by the very nature of the request would defeat the spirit and rule of *Procter & Gamble* and *Douglas Oil*. Their request offends the common-law concern for the traditional protection of the innocent that has been built into our grand jury system from its earliest conception."

---

**6.** There the documents had been used by government agents to elicit confessions from defendants. Because the documents had first been reviewed by the grand jury, defendants argued that the disclosure to themselves violated Rule 6(e).

■ Accordingly this Court views the disclosure plaintiffs seek as effectively that of "grand jury proceedings." As such, it must be subjected to the rigid requirements of Rule 6(e) as interpreted by the Supreme Court, though this is a civil action and the discovery requests are directed solely at the defendants. For the reasons stated in Chief Judge Parsons' opinion this Court also believes that plaintiffs have failed to demonstrate a "particularized need" for the grand jury materials (as designated) and therefore are not entitled to their production under *Procter & Gamble* and *Douglas Oil.*

### 2. *Plaintiffs' Document Request No. 6: Grand Jury Transcripts*

Defendants have now informed the Court and plaintiffs that they possess no transcripts of grand jury proceedings. Request No. 6 is therefore moot.

### 3. *Plaintiffs' Document Request No. 7: Presentencing Memoranda*

■ Plaintiffs' request for copies of presentencing materials is apparently based on a contention that they refer to pertinent materials submitted to the grand jury. This Court might then simply deny Request No. 7 for the reasons applicable to Request No. 3.

There are however important policies mandating the confidentiality of presentence reports, independent of any grand jury considerations, that should not go unmentioned. As our Court of Appeals stated in another context, *United States v. Greathouse,* 484 F.2d 805, 807 (7th Cir. 1973):

> [R]equiring disclosure of a presentence report is contrary to the public interest as it would adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused for use in the sentencing process.

With the possible exception of a defendant's right of allocution,[7] no single factor plays a more significant part in sentencing decisions than the presentence investigation report. Moreover, its value (and therefore the need for its being completely informative, including much data that might not be admissible in judicial proceedings) does not end with sentencing: It has ongoing importance to the Parole Commission in the exercise of its functions in dealing with committed defendants.

Both the Parole Commission and the Administrative Office of the United States Courts are even now urging the confidentiality of such reports in a different context. This month our District Court amended its Criminal Rule 2.07 to provide that disclosure of such reports to the Parole Commission itself is on a confidential loaned basis.

Both the entire thrust of Rule 32(c) and our local Criminal Rule 2.07, and the policies they both serve, make plain the need for such confidentiality. We judges would break faith with defendants, whom we uniformly urge to cooperate with and make full disclosure to the Probation Office to assist us in our sentencing decisions, if we opened the reports up to public scrutiny. Nothing submitted by plaintiffs justifies any attenuation of all those policies by granting disclosure to plaintiffs.

### Conclusion

Plaintiffs' Motion for reconsideration of Magistrate Cooley's November 20, 1980 order is denied. As a substantive matter, all of plaintiffs' disputed requests for production are also denied.

---

**7.** Indeed effective exercise of the right of allocution itself depends on the defendant's access to and ability to comment on the report.