STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin E. CROWELL, Defendant-Appellant.

Supreme Court

*No. 88–0040–CR. Argued March 2, 1989.—Decided May 30, 1989.*

(Also reported in 440 N.W.2d 352.)

860

For the defendant-appellant there were briefs (in court of appeals) by *Craig M. Kuhary* and *Matthew H. Huppertz & Associates*, Milwaukee, and oral argument by *Mr. Kuhary.*

For the plaintiff-respondent the cause was argued by *Paul Lundsten,* assistant attorney general, with whom on the brief (in court of appeals) was *Donald J. Hanaway,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This appeal from a judgment of conviction of the Circuit Court for Kenosha County, Bruce E. Schroeder, Circuit Judge, comes before this court on certification from the court of appeals. Sec. 809.61, Stats. 1987–88.

The court of appeals certified the following question to this court: "Whether sec. 972.15, Stats., prohibits the introduction at trial of statements contained in a presentence report prepared pursuant to a guilty plea that was subsequently withdrawn." We hold that it does. We therefore conclude that the circuit court erred when it allowed the state to introduce at a trial conducted after the defendant withdrew his guilty plea the statements the defendant made to a probation and parole officer who conducted a presentence investigation in connection with the defendant's guilty plea. The error was prejudicial, and we therefore reverse the judgment of conviction and remand the cause to the circuit court for a new trial.

The facts are undisputed for purposes of this appeal. The defendant was charged with two counts of first degree sexual assault with a child under the age of 12 contrary to sec. 940.225(1)(d), Stats. 1985–86.

The defendant first entered a plea of not guilty. He then added a plea of not guilty by reason of mental disease or defect. The defendant changed his mind and, pursuant to a plea agreement, entered a plea of guilty to the first count; by agreements the second count was to be dismissed and read in for sentencing purposes. During hearings on the plea, the defendant wavered about whether to withdraw his plea of not guilty by reason of mental disease or defect and, instead, plead guilty. He finally decided to enter a plea of guilty to the first count of sexual assault. The circuit court found the defendant guilty of the first count, dismissed the second count with the proviso that it be read in for sentencing purposes, and ordered a presentence investigation.

After the presentence investigation the circuit court held a sentencing hearing at which the court read a letter from the victim's father demanding that the defendant's blood be tested for AIDS and that the victim's family and the court be apprised of the results of that test. The circuit court ordered testing of the defendant's blood. The defendant objected to the testing, sought a writ of prohibition, fired his attorney, and moved to withdraw his guilty plea. After receiving verbal assurances from the victim's father that the victim had adequate recall of the events in question, the circuit court granted the defendant's motion to withdraw his guilty plea and to enter a plea of not guilty. After trial by jury the defendant was convicted of two counts of first degree sexual assault.

This appeal arose because during the state's case in chief, the circuit court, over the defendant's objection, allowed the probation and parole officer, who conducted the presentence investigation, to testify about the defendant's statements to her.

Prior to the introduction of the officer's testimony the circuit court held a *Miranda/Goodchild* hearing.[1] The probation and parole officer testified that she had met with the defendant four times at the Kenosha County Jail to conduct the presentence investigation. The officer testified that she told the defendant that the information she received would be given to the circuit court for sentencing. The officer obtained an oral statement from the defendant regarding the sexual assault; the defendant refused to give her a written statement. At no time during their four discussions did the officer advise the defendant of his *Miranda* rights. The officer never told the defendant what would happen if he failed to provide a statement or that his statements could be used against him in court. She also did not inform him that if he changed his mind and withdrew his guilty plea, whatever he said could be used against him. After she concluded her investigation, the officer prepared a written report and submitted it to the circuit court.

One of the defendant's previous attorneys testified (after a waiver of the attorney-client privilege) that he had advised the defendant that the probation and parole officer was a very important person and that the defendant should be completely candid with her. Another of the defendant's previous attorneys testified that he never told the defendant he did not have to speak with the officer. Neither attorney discussed with the defendant the potential consequences of a presentence confession if the defendant decided to withdraw his plea.

---

[1]*Miranda v. Arizona,* 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

The circuit court ruled that the defendant's statements to the officer were voluntary; that the officer need not have given the defendant *Miranda* warnings because the setting was not custodial; and that secs. 904.10 (governing admissibility of a guilty plea)[2] and 972.15 (governing presentence investigation reports) do not apply.

The circuit court allowed the officer to testify about the defendant's statements to her regarding his conduct with the victim. The state elicited the following testimony from the officer:

Q: Now, did Mr. Crowell indicate to you whether or not he had rubbed D.E.D. [the six-year-old victim] between her legs?

A: Yes, he did.

Q: And what did he say with regard to that?

A: He said he rubbed her between her legs but that he didn't put his fingers in her vagina.

Q: Okay. Did he make any—And did he make reference to the fact that he asked D.E.D. quite a few times whether he was hurting her?

A: Yes, he did.

---

[2]Sec. 904.10, Stats. 1985–86, provides as follows:

Evidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for his conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.

\* \* \* \*

Q: Now, Mr. Crowell [the defendant] also indicated to you that he knew what he did was wrong?

A: Yes.

MR. STERN [the defendant's attorney]: I object to the question. It's irrelevant and immaterial.

THE COURT: Overruled.

Q: And he indicated that the reason he engaged in this activity was because he wanted to know what it was like to play with someone so small?

A: That's correct.

\* \* \* \*

Q: Miss Nicolazzi [the probation and parole officer], even though your notes don't reflect any statements regarding exactly where it was that Mr. Crowell [the defendant] stated he touched D.E.D., what's your independent recollection with regard to where he indicated he touched her?

A: Well, first of all, we discussed exactly what's in the criminal complaint, and the criminal complaint says that he put his fingers in her vagina, and so then we went back and talked about that. Since his story was a little bit different, then I did ask him if it was in the pubic area and he said yes. I didn't repeat that down there because we were talking about the sexual issues and I felt it was clear what I said.

In his appeal, the defendant argues that his admissions to the probation and parole officer were obtained in violation of his fifth amendment privilege against self-incrimination because he did not receive

865

*Miranda* warnings during the presentence interview; that sec. 972.15, Stats. 1985–86, prohibited the introduction at trial of statements contained in the presence investigation report; and that because statements made in a presentence investigation are indistinguishable from statements made during the course of a guilty plea, the rationale of sec. 904.10, for excluding statements during a guilty plea, should be applied to exclude admissions made during a presentence investigation.

The court of appeals certified to this court the second of these three issues, namely the applicability of sec. 972.15, the issue it considers determinative of the case.

Sec. 972.15 provides, in relevant part:

> **Presentence Investigation. (1)** After conviction the court may order a presentence investigation.
>
> **(2)** When a presentence investigation report has been received the judge shall disclose the contents of the report to the defendant's attorney and to the district attorney prior to sentencing. When the defendant is not represented by an attorney, the contents shall be disclosed to the defendant.
>
> . . . .
>
> **(3)** The judge may conceal the identity of any person who provided information in the presentence investigation report.
>
> **(4)** After sentencing, unless otherwise ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court.

On appeal the state argues that the circuit court did not err in admitting the testimony of the probation and parole officer because sec. 972.15, Stats. 1985–86,

by its terms, applies to the presentence investigation report and not to the testimony of the person who collects information for the report. The state argues further that sec. 972.15 does not purport to set forth an all inclusive list of uses for the information gathered in the course of a presentence investigation. Accordingly, the state concludes that sec. 972.15 does not bar the officer's testimony concerning a subject included in the presentence investigation report.

The defendant asserts that the plain meaning of sec. 972.15 dictates that the only persons authorized to have access to the report, as well as information contained in the report, aside from the sentencing court, are the defendant's attorney and the prosecutor, and they have access only during the period between conviction and sentencing. The defendant urges that sec. 972.15 necessarily excludes a jury sitting as a trier of fact from hearing testimony regarding information collected for the presentence investigation report.

The issue in this case is one of first impression in Wisconsin. It is an issue of statutory interpretation, an issue of law. This court need not give deference to the determination of the circuit court.

Neither the statute nor Wisconsin case law expressly addresses the question of the use to which statements made by a defendant for purposes of a presentence investigation report may be put when the defendant withdraws a guilty plea.

The language of sec. 972.15 reflects an assumption that when the presentence investigation is underway the defendant has already been convicted, and that he or she will remain convicted. The statute does not expressly state how the information gathered for the presentence investigation report or the report itself

might be used if the defendant's conviction is overturned and the defendant goes to trial. Nor does the commentary to sec. 972.15 address the use of the information the probation and parole officer acquired during the presentence investigation or the presentence investigation report itself during a trial to determine guilt.

When we look to the purpose of a presentence investigation report, however, it becomes clear that the legislature did not intend that the information collected for the report or the report itself be used at trial if the defendant withdraws the guilty plea.

■

The presentence investigation report is designed to assist the sentencing court in determining the appropriate sentence for that defendant and the public. Rational and consistent sentencing decisions cannot be achieved without a reliable information base. The presentence investigation report is supposed to provide the sentencing court with that information base. *State v. Heffran,* 129 Wis. 2d 156, 163, 384 N.W.2d 351 (1986); *State v. Knapp,* 111 Wis. 2d 380, 384–85, 330 N.W.2d 242 (Ct. App. 1983); *Neely v. State,* 47 Wis. 2d 330, 334–335, 177 N.W.2d 79 (1970); 3 A.B.A. *Standards for Criminal Justice* sec. 18–5.1, Commentary, pp. 18–335–336 (2d ed. 1980); 4 *Encyclopedia of Criminal Justice,* Sentencing, p. 1472 (1983). Commentators agree that the part of the presentence investigation report dealing with the offense and the circumstances of its commission is probably the most important part of the report for purposes of sentencing. 3 A.B.A. *Standards for Criminal Justice,* sec. 18–5.1, Commentary, p. 18–350 (2d ed. 1980); 4 *Encyclopedia of Criminal Justice,* Sentencing, p. 1473 (1983).

The quality and accuracy of the presentence investigation report depend in large measure on the cooperation of the defendant. During the presentence interview the probation and parole officer attempts to establish a cooperative relationship with the defendant, and the defendant is encouraged to be open with the officer so that the sentencing court will be provided with all of the relevant information it needs when making the sentencing decision. *Bd. of Educ. of Evanston T'nship v. Admiral Heating and Ventilating,* 513 F. Supp. 600, 605 (N.D. Ill. 1981). If the law were to allow this information acquired during the presentence investigation to be used against a defendant at trial, the defendant would be reticent to reveal potentially dangerous facts, and the information gathering process for sentencing purposes would be significantly inhibited.

Accordingly a principal reason for the legislature's directing in sec. 972.15 that the presentence investigation report be prepared only after the determination of guilt is to increase the likelihood of obtaining the cooperation of the defendant. It is only after conviction that a defendant is assured that his or her statements cannot be used for purposes of obtaining a conviction. If this court were to allow a presentence investigation report or the probation and parole officer's testimony about the defendant's statements to be used against a defendant after withdrawal of a guilty plea, we would undermine the defendant's confidence in speaking freely and fully to the investigating officer. 3 A.B.A. *Standards for Criminal Justice,* sec. 18-5.2, Commentary, p. 18-358 (1980).

A second reason for the legislature's providing in sec. 972.15 that the presentence investigation report be prepared only after conviction is to eliminate the risk that the trial court or jury may be prejudiced by the

contents of the report in determining guilt. The A.B.A. Standards Committee viewed judicial access to the presentence investigation report prior to a verdict as extremely undesirable. 3 A.B.A. *Standards for Criminal Justice,* sec. 18–5.2, Commentary, p. 18–358–360 (1980). The National Advisory Commission on Criminal Justice Standards and Goals (Corrections) creates a rebuttable presumption of prejudice "[u]pon a showing that the report has been available to the judge prior to the adjudication of guilt." Sec. 5.15(2) at p. 186 (1973).

In *Rosado v. State,* 70 Wis. 2d 280, 286, 234 N.W.2d 69 (1975), this court explained that the reason for limiting access to the presentence investigation report to postconviction proceedings was to avoid prejudicing the fact finder. We stated: "The rule that presentence reports should be considered only after conviction is designed to prevent possibly prejudicial information from coming to the attention of the judge when he is still either considering the guilt or innocence of the defendant in a trial to the court, or supervising a jury trial." In *Rosado* the defendant pled guilty. He objected, however, to the trial court's ordering and reading a presentence investigation report before it formally accepted his guilty plea. The *Rosado* court concluded that the trial court's action literally violated sec. 972.15, which provides that the trial court should not order, and therefore should not examine, the presentence investigation report until after conviction. We held the error harmless in *Rosado,* because the trial court had carefully assured itself of the voluntariness of the plea and the factual basis for the crime before reading the presentence investigation report. The trial court's acceptance of the guilty plea in *Rosado* after receiving the presentence investigation report was a mere formality.

The United States Supreme Court has recognized that the rule prohibiting disclosure of the presentence investigation report before conviction should not be taken lightly; the rule has the important purpose of trying to prevent prejudicial information from reaching the fact finder. In *Gregg v. United States,* 394 U.S. 489 (1969), it appeared that the trial judge may have read the presentence investigation report while the jury was deliberating. The Court stated that Rule 32 of the Federal Rules of Criminal Procedure (the counterpart to sec. 972.15, Stats. 1985–86) expressly prohibits submitting the presentence investigation report to the trial court before the defendant pleads guilty or is convicted. *Gregg, supra,* 394 U.S. at 491. The Court explained that the information in the presentence investigation report might prejudice the trial court in the determination of guilt regardless of whether the judge or the jury is the fact finder:

> There are no formal limitations on [the contents of the presentence investigation reports], and they may rest on hearsay and contain information bearing no relation to the crime with which the defendant is charged. To permit the *ex parte* introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice from premature submission of the presentence report. No trial judge, therefore, should examine the report while the jury is deliberating since he may be called upon to give further instructions or answer inquiries from the jury, in which event there would be the possibility of prejudice which Rule 32 intended to avoid. Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular charac-

ter and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so.

The *Gregg* Court concluded that although the trial court had erred, the error was harmless. First, it was not clear that the trial judge had read the presentence investigation report before the jury verdict was delivered. Second, even if the trial judge had read the report during the jury's deliberations, he did not infect the jurors with anything he learned from the report because he had not communicated with them after he received the report. Third, the presentence investigation report contained no information that had not been received at prior proceedings. The Supreme Court's focus in *Gregg,* as this court's focus in *Rosado,* was on ensuring that the determination of guilt or innocence was not affected by the presentence investigation report.

Upon examining the purposes of presentence investigation reports and sec. 972.15, we conclude that the legislature intended sec. 972.15 to restrict the use of the probation and parole officer's testimony about the defendant's statements during the presentence investigation and the presentence investigation report to proceedings after conviction and for the purpose of helping the sentencing court impose a sentence appropriate for that defendant and the public. We conclude that disclosure of the report and the defendant's statements to the probation and parole officers in this case in connection with the determination of guilt violates sec. 972.15. We conclude that the circuit court erred in this case in allowing the probation and parole officer to testify at trial about the defendant's state-

ments to the officer during the presentence investigation.

The state argues that even if the circuit court erred in admitting the officer's testimony about the defendant's statements during the presentence investigation, the error was harmless.[3] The test for prejudicial error is whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result. The burden of proving harmless error is on the beneficiary of the error—here, the state. The state's burden, then, in this case is to establish that there is no reasonable possibility that the error contributed to the conviction. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

The state asserts that the jury would have found the defendant guilty even without the defendant's admission because the other evidence, especially that of the victim, her parents, and a social worker, established an extremely credible account of the assault.

This court must make an inquiry into the nature of all of the evidence that the jury heard to assess whether

---

[3]One federal court has held that in light of the Supreme Court's strong language in *Gregg, supra,* 394 U.S. at 491–492, the factfinder's reading the presentence investigation report before conviction in violation of the rule is *per se* reversible error. *United States v. Park,* 521 F.2d 1381, 1382-383 (9th Cir. 1975).

The federal courts have generally concluded that where the guilty plea has been withdrawn and the trial judge has read the report, the federal rule does not preclude the judge from presiding at the new trial. *See, e.g., United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir. 1976), cert. denied 431 U.S. 918, *United States v. Lyon,* 588 F.2d 581 (8th Cir. 1979); *United States v. Ferretti,* 508 F. Supp. 913 (E.D. Pa. 1981).

an error in admitting certain evidence was harmless. We look to the totality of the record. *State v. Dyess, supra,* 124 Wis. 2d at 547. We have set forth the erroneously admitted defendant's statements above. We now examine the other evidence.

D.E.D.'s mother testified that the defendant babysat for her three children on three occasions and that she had no complaints about his conduct. D.E.D.'s father testified that he had employed the defendant to perform painting and other tasks at his house and other locations.

The mother testified that on the evening in question the defendant babysat for approximately two hours. When she and her husband returned, she observed that her daughter (D.E.D.) appeared nervous. D.E.D. first said to her mother, "I have a rug burn on my bottom" but then later said that she really did not have a rug burn, but that the defendant had "rubbed me between my legs and made me hurt." D.E.D.'s mother testified that her daughter's vaginal area was red and swollen and that she had never seen her daughter with that condition before. D.E.D. told her mother not to tell "because if you do he'll never be able to come back here, he'll never be able to babysit us again."

After putting her daughter to bed, the mother rejoined her husband and the defendant who were together in another part of the house. She did not, however, mention her conversation with D.E.D. The husband and the defendant left the house shortly after and stopped at a nearby tavern. The husband later called his wife from the tavern, and she told him what their daughter had said.

The husband testified that shortly after he spoke to his wife on the phone, he confronted the defendant

with D.E.D.'s accusation. The two returned to the residence so that D.E.D.'s father could get more information before he let the defendant leave. D.E.D. was asleep when they arrived, however, and he could not awaken her. After talking with his wife, he gave the defendant a ride to another location.

D.E.D.'s mother testified that she took D.E.D. to the pediatrician the following day. She testified that the redness and swelling in the vaginal area were gone.

The pediatrician testified that he did not find any unusual signs indicative of sexual abuse other than a mild redness on the left side of D.E.D.'s vaginal opening. He testified that it was not unusual for children D.E.D.'s age to have such redness and he did not treat D.E.D. for any problems associated with the vaginal area. However, he also testified that according to medical literature, 20–67 percent of sexually assaulted children have normal exams.

D.E.D.'s father testified that he did not meet with the defendant after the incident but that the defendant telephoned him approximately three times a week. During these conversations, D.E.D.'s father tried to get the defendant to return by minimizing the occurrence and telling the defendant that he thought it would all blow over. The defendant did not say where he could be reached. D.E.D.'s father testified that during the final telephone conversation the defendant said that "there was a possibility that he did it" but that he would never be found because he had changed his appearance and name. The defendant was subsequently apprehended.

The defense attempted to show that the father's testimony regarding the defendant's inculpatory statements were fabricated because of a zealous desire to have the defendant prosecuted for the assault of his daughter. D.E.D.'s father testified that he continued to

speak to the defendant in order to "bait" him into returning so he "could strangle him."

D.E.D. also testified at trial. She testified that after her parents left, the defendant and she played in the upstairs hallway. They pretended that D.E.D. was Crowell's teddy bear and that during this game the defendant was "touching her bottom." Using a doll, D.E.D. indicated to the jury that Crowell had "rubbed" her with his fingers "between the legs and on the bottom."

D.E.D. testified that they then went downstairs and watched a movie. Afterwards she and the defendant were alone in her bedroom and he was in her bed with her. D.E.D. testified that Crowell "was licking his fingers and touching my bottom." She testified that Crowell told her not to tell anyone because he would not be able to babysit again. He also repeatedly asked her if it hurt. D.E.D. testified that she told her mother about what happened when the mother returned home.

A social worker interviewed D.E.D. two days after the incident. The social worker testified that D.E.D. gave her essentially the same account that D.E.D. gave at trial.

The evidence is sufficient without the probation and parole officer's testimony to support a conviction of two counts of first degree sexual assault. We conclude, however, that the state has not met its burden of showing that there is no reasonable possibility that the probation and parole officer's testimony contributed to the conviction.

The state argued vociferously to persuade the circuit court to admit the officer's testimony. The defendant strongly objected to the admission of the testimony. Both the state and the defendant obviously viewed the officer's evidence as very important.

The officer's testimony must have had a significant impact on the jury, independent of any other evidence. A defendant's admission of guilt has enormous probative force, and jurors surely must give great weight to an admission. It is the particularly persuasive impact of a defendant's admission of guilt that creates its prejudicial effect. Allowing the defendant's statements as evidence creates the danger that the jury may overestimate the probative effect of the admission and not scrutinize other evidence carefully.

The state has not been able to establish on this record the reasonable possibility that the probation and parole officer's testimony did not contribute to the conviction. Where, as here, the circuit court's error involves crucial, highly probative evidence, "the judgment should be reversed unless we can be sure that the error did not contribute to the guilty verdict. Here, looking to the totality of the record, it is apparent that such assurance cannot be reached with any degree of confidence." *State v. Dyess, supra,* 124 Wis. 2d at 547.

In this case we conclude that the error was not harmless. Accordingly, we reverse the judgment of the circuit court and remand the cause to the circuit court for a new trial.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded for a new trial.