STATE of Wisconsin, Plaintiff-Respondent,

v.

Raymond W. WEBER, Defendant-Appellant.†

Court of Appeals

No. 92-1242-CR. *Submitted on briefs November 9, 1992.—Decided January 27, 1993.*

(Also reported in 496 N.W.2d 762.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick Donnelly,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *Sally L. Wellman,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. In a prior appeal, we reversed a judgment of conviction against Raymond W. Weber because the trial court, by a previously assigned judge, had failed to accord Weber a trial as to his claimed mental disease or defect. *See State v. Weber*, 146 Wis. 2d 817, 433 N.W.2d 583 (Ct. App. 1988). In that earlier proceeding, a jury had found Weber guilty of escape in violation of secs. 946.42(3)(a) and 939.05, Stats.; taking a hostage without injury in violation of secs. 940.305 and 939.05, Stats.; and operating a vehicle without owner's consent in violation of secs. 943.23(1) and 939.05, Stats. We remanded for a trial on the question of Weber's mental responsibility.

The phase two/mental responsibility trial has now taken place. A jury has determined that Weber was not suffering from any mental disease or defect at the time he committed the crimes. On appeal, Weber contends that: (1) the trial court erred in allowing a state's psychiatrist to give hearsay testimony; (2) he was denied the effective assistance of trial counsel; and (3) alternatively to the ineffective assistance of counsel claim, he should be granted a new trial in the interests of justice.[1]

Though we agree that the trial court's evidentiary ruling was error, we conclude that the error was harmless. We also conclude that Weber received effective assistance of trial counsel. We also reject Weber's request for a new trial in the interests of justice.

## FACTS AND PROCEDURAL HISTORY

The facts of the case relevant to our review are undisputed. On July 7, 1984, Weber and two other

---

[1] We construe Weber's Notice of Appeal as being from the June 11, 1991 order reinstating the judgment of conviction previously entered on May 30, 1985 and from the May 6, 1992 order denying his motion for postconviction relief.

inmates of the Kettle Moraine Correctional Institution took a correctional officer hostage and attempted to escape by driving a state-owned vehicle through the facility's front gate. Thereafter, on May 30, 1985, a jury found Weber guilty of escape, taking a hostage without injury and operating a vehicle without the owner's consent. Following that determination of guilt, however, Weber was not accorded a phase two trial as required by his special plea.[2] We therefore remanded the case for a phase two proceeding.

The phase two proceeding consumed several days of trial and resulted in the production of extensive psychiatric testimony. To rebut Weber's claim of mental disease or defect, the state offered evidence of Weber's motivation and calculated plan for attempting the escape. Without objection from the defense, the probation and parole officer who prepared the presentence investigation report following the 1985 trial read to the jury Weber's version of the escape that was given to the officer by Weber during the presentence interview.[3] Sev-

---

[2] Section 971.15(1), Stats. The statute in full provides:

**971.15 Mental responsibility of defendant. (1)** A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law.

**(2)** As used in this chapter, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

**(3)** Mental disease or defect excluding responsibility is an affirmative defense which the defendant must establish to a reasonable certainty by the greater weight of the credible evidence.

[3] Weber's version of the escape as read to the jury from the presentence report included the following statements: Weber was high at the time of the escape because a co-defendant had placed PCP in his soda; he saw a chance to escape because the correctional institution did not have bars; he was not the ringleader; he

eral witnesses from the phase one proceeding were also allowed to read the transcript of their earlier testimony at the phase two proceeding pursuant to the parties' pretrial stipulation.

In support of his special plea, Weber produced the testimony of two psychiatry experts, Dr. F. Greg Krembs and Dr. Robert Gale, both of whom testified that Weber suffered from a mental disease and was unable to conform his conduct to the requirements of the law at the time of the attempted escape.

In opposition, the state produced the testimony of Dr. Frederick Fosdal, a psychiatrist appointed by the trial court to evaluate Weber's mental condition at the time of the offenses. Prior to rendering his opinion, Dr. Fosdal responded to a lengthy series of questions on direct examination relating to Weber's treatment history. Dr. Fosdal stated that he first evaluated Weber in 1977 while performing consulting work at the hospital where Weber was receiving treatment. Reflecting upon two meetings with Weber that led to that initial evaluation, Dr. Fosdal stated Weber "said very little and was quite unresponsive, rather mute, looked very distressed, and I obtained little information from him." Dr. Fosdal further testified that although he considered the possibility that Weber was "malingering or faking symptoms or kind of goofing around," he nonetheless initially diagnosed Weber as mentally ill because of his apparent "regressed, withdrawn [and] noncommunicative state."

Still relating Weber's treatment history, Dr. Fosdal then stated that later acquired background information

---

was thinking of his children; the escape attempt was spontaneous; a co-defendant made the weapon; had he not been serving sixty-four years for his previous armed robbery conviction, he would not have attempted to escape; he was stoned but still knew his steps; and he was guilty of the escape but confused.

and treatment records led him to conclude that Weber was not mentally ill but had instead an "antisocial personality disorder." As Dr. Fosdal further explained, that diagnosis caused him to question whether Weber had been simulating symptoms of mental illness or "malingering" when he was initially examined.

Dr. Fosdal, over Weber's objection, recounted a hearsay statement he had obtained in 1977 which suggested to him that Weber had been malingering. Specifically, Dr. Fosdal related that "there was another resident at Central State Hospital [who] . . . said that . . . Weber discussed with him how he was going to try to handle his then legal case. He was in a pretrial status. And to look crazy, act mentally ill."

In overruling Weber's hearsay objection, the trial court noted that medical experts routinely rely on hearsay information and that, in so doing, the expert passes on the reliability of the hearsay information. Thus, the court reasoned that the underlying hearsay data upon which a medical expert relies is admissible. The court therefore allowed Dr. Fosdal to testify to the hearsay statement. Ultimately, Dr. Fosdal testified that based upon his interviews with Weber and a review of all acquired collateral records, Weber did not suffer from a mental disease or defect at the time of the 1984 escape attempt.[4]

---

[4] Specifically, Dr. Fosdal testified that his opinion was based upon the police reports generated from the 1984 incident, the transcripts of the phase one trial and the sentencing hearing, a brief 1990 interview with Weber, the presentence investigation report, Weber's correctional records, certain collateral clinical service records and treatment reports, and previous contacts with Weber.

## I. THE COURT'S EVIDENTIARY RULING

We first address whether Dr. Fosdal's testimony concerning the 1977 hearsay statement that Weber had stated he was going to act mentally ill constituted inadmissible hearsay under sec. 907.03, Stats. (1989-90).[5] A trial court's decision to admit or exclude evidence is a discretionary determination and will not be disturbed on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and in accordance with the facts of record. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265 (Ct. App.), *cert. denied*, 113 S.Ct. 608 (1992).

The trial court proceeded from the assumption that although the 1977 statement constituted hearsay, it was admissible as a basis for Dr. Fosdal's opinion because it was the type of data "reasonably relied upon by experts" as required by sec. 907.03, Stats. (1989-90). That the statement is the type of data reasonably relied upon by an expert in Dr. Fosdal's field, however, does not mean that the statement itself is automatically admissible into evidence. *In re S.Y.*, 156 Wis. 2d 317, 327, 457 N.W.2d 326, 330 (Ct. App.), *aff'd*, 162 Wis. 2d 320, 469 N.W.2d 836 (1990); *State v. Coogan*, 154 Wis. 2d 387, 399-400, 453 N.W.2d 186, 190 (Ct. App. 1990), *cert. denied*, 113 S.Ct. 495 (1992). Section 907.03 allows an expert to base an opinion upon data that constitute hearsay if the data

---

[5] Section 907.03, Stats. (1989-90), provides:

**Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

106

are of a type reasonably relied upon. *Id.* However, sec. 907.03 is not a hearsay exception. *Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 37 n.10, 469 N.W.2d 595, 610 (1991). Hearsay data upon which the expert's opinion is predicated may not be automatically admitted into evidence by the proponent and used for the truth of the matter asserted unless the data are otherwise admissible under a recognized exception to the hearsay rule.[6] *See id.* at 37 & n.10, 469 N.W.2d at 610. *See also Gong v.*

---

[6] Even though the hearsay reasonably relied upon by the expert as a basis for the opinion may be inadmissible for the truth of the matter asserted, it is suggested that secs. 907.03, 907.05 and 904.03, Stats. (1989-90), collectively permit the trial court several options. The court may permit full disclosure of the inadmissible hearsay basis followed by a limiting instruction which informs the jury that the basis may not be used for its truth. The court may preclude any mention of the inadmissible hearsay basis during the proponent's direct examination, allowing only the expert's opinion that is founded upon it. Finally, the court may edit the inadmissible hearsay basis so that the jury is informed generally about its nature, but withhold the full details. *See* 7 D. BLINKA, WISCONSIN PRACTICE—EVIDENCE sec. 703.4 (1991). Several federal circuits have also agreed with the view that the trial court may, in its discretion, allow an expert to testify to otherwise inadmissible facts for the limited purpose of serving as a basis of the expert's opinion. *See, e.g., Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1270-71 (7th Cir. 1988), and the cases cited therein. Of course, the inadmissible hearsay relied upon by the expert may also be elicited on cross- examination by the opponent for the limited purposes of impeachment and verbal clarity. If a party's expert relies on certain data, fair play requires that the opponent may show that the data relied on did not support the conclusions of the testifying expert, or that the data relied on contained information ignored by the testifying expert. *Karl v. Employers Ins.*, 78 Wis. 2d 284, 300, 254 N.W.2d 255, 262 (1977); *State v. Coogan*, 154 Wis. 2d 387, 399-400, 453 N.W.2d 186, 190 (Ct. App. 1990), *cert. denied,* 113 S.Ct. 495 (1992). Such is not the case

*Hirsch*, 913 F.2d 1269, 1272-73 (7th Cir. 1990); *Nacht-sheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1270 (7th Cir. 1988).

■

Though the trial court correctly recognized that sec. 907.03, Stats. (1989-90), allowed Dr. Fosdal to offer an opinion based in part upon hearsay data that was otherwise inadmissible,[7] the court erred in its apparent belief that the statute also permits the underlying hearsay data to be admitted as evidence. While Dr. Fosdal was clearly permitted under sec. 907.03 to rely upon the statement for his ultimate opinion as to Weber's mental responsibility, the state was obliged to qualify the statement under some exception to the hearsay rule before the statement itself could be admitted into evidence and used substantively for the truth of the matter asserted.[8]

here, however, since the inadmissible hearsay was elicited on direct examination.

[7] We assume without deciding that the statement was the type of information reasonably relied upon under sec. 907.03, Stats. (1989-90). The indicia of reliability under sec. 907.03 is the fact that experts in the field rely on that type of data in forming their opinions. *Brain v. Mann*, 129 Wis. 2d 447, 460-61, 385 N.W.2d 227, 233 (Ct. App. 1986). The expert is assumed, if he or she meets the test of sec. 907.02, Stats. (1989-90), to have the skill to properly evaluate the hearsay as a basis for a judgment upon which he or she would act in the practice of his or her profession, and to give it the probative force appropriate to the circumstances. *See Brain*, at 461, 385 N.W.2d at 233.

[8] At closing argument, the state used the statement for its truth. The state argued that Dr. Fosdal's 1977 rediagnosis was "based in part upon information supplied to him by way of another resident at Central State Hospital who had reported under oath indicating that he had witnessed Mr. Weber talking about trying to . . . fake a mental illness back then because of his problems that he was going through." Later, the state argued that

Despite our conclusion that Dr. Fosdal's testimony concerning the 1977 statement constituted inadmissible hearsay under sec. 907.03, Stats. (1989-90), we reject Weber's argument that the error entitles him to a new phase two trial. Under sec. 805.18(2), Stats., we are not to order a new trial for the improper admission of evidence unless an examination of the entire proceeding leads us to conclude that the error affected the substantial rights of the party seeking relief on appeal.[9] To determine whether the "substantial rights" of a party have been affected, we use the harmless error test. *Heggy v. Grutzner*, 156 Wis. 2d 186, 196, 456 N.W.2d 845, 850 (Ct. App. 1990); *see also State v. Dyess*, 124 Wis. 2d 525, 542-43, 370 N.W.2d 222, 231-32 (1985). An error is harmless and does not justify reversal if we can be sure that the error did not contribute to the guilty verdict. *Dyess* at 547, 370 N.W.2d at 233.

Dr. Fosdal did not testify that Weber was malingering. Instead, he testified that Weber suffered from an "antisocial personality disorder" and that the hearsay statement and other underlying data which he received substantiated this condition. Dr. Fosdal did not testify

---

"[t]he evidence indicates he faked it before, and I would suggest to you that the evidence indicates today as it has over the last two days, that this entire defense has been nothing more than a shroud to cover the truth."

[9] Section 805.18(2), Stats, provides:

No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

or represent that the hearsay statement was the controlling or driving factor in reaching his opinion. Quite to the contrary, the hearsay evidence came out as Dr. Fosdal was relating Weber's treatment history. Furthermore, before the hearsay evidence was presented, Dr. Fosdal already had advised the jury that he considered Weber's malingering or faking when he made his 1977 diagnosis based upon the two initial interviews. Thus, the jury would have heard about the prospect of Weber's malingering even without the hearsay evidence.

Given the context in which the error arose, we are satisfied that the jury did not misinterpret or misuse the hearsay statement. This evidence was but a small portion of substantial data upon which Dr. Fosdal relied and to which he alluded. The jury heard evidence of Dr. Fosdal's reliance upon the police reports generated from the 1984 incident, the transcripts of the phase one trial and the sentencing hearing, a brief 1990 interview with Weber, the presentence investigation report, Weber's correctional records, certain collateral clinical service records and treatment reports, and the previous contacts with Weber.

Moreover, the issue in this case was Weber's mental condition in 1985—not 1977 when the hearsay information was imparted to Dr. Fosdal. The evidence of both parties focused on this inquiry. This point was also driven home by the defense during its opening and closing arguments to the jury. And, although the state's final argument alluded to Weber's possible faking in 1977, the argument properly focused the jury on Weber's mental condition at the time of the offenses in 1985.

■■

In light of these factors, we are satisfied that the admission of the hearsay evidence was harmless and did not contribute to the jury's determination that Weber

was mentally responsible for his crimes. *Cf. State v. Crowell*, 149 Wis. 2d 859, 873-77, 440 N.W.2d 352, 358-60 (1989).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Weber next contends that his trial counsel was ineffective in two regards: (1) failing to object to the reading of a presentence investigation report statement that Weber gave to his probation and parole agent; and (2) allowing witnesses from the phase one proceeding to read their testimony from that proceeding at the phase two trial.

The state called as a witness the probation and parole officer who conducted the presentence investigation following Weber's phase one determination of guilt. Without objection by Weber's defense counsel, the officer was allowed to read to the jury the portion of the report labeled "offender's version of the crime," which documented Weber's statements to the officer during the investigation interview. The officer testified that Weber stated "he was stoned [at the time of the 1984 escape attempt] but still knew his steps."

Whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *State v. Smith*, 170 Wis. 2d 701, 714, 490 N.W.2d 40, 46 (Ct. App. 1992). The trial court's findings of what counsel did and the basis for the challenged conduct are factual and will be upheld unless clearly erroneous. *Id.* However, whether counsel's conduct amounted to ineffective assistance is a question of law which we review *de novo. Id.*

The two-pronged test for ineffective assistance of counsel is deficient performance of counsel and prejudice to the defendant. *Strickland v. Washington*, 466 U.S.

668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). The test for the performance prong is whether counsel's assistance was reasonable under the facts of the particular case viewed as of the time of counsel's conduct. *Pitsch* at 636-37, 369 N.W.2d at 716. Because we conclude neither defense counsel's failure to object to the reading of the presentence investigation report statement nor his decision to stipulate to the reading of several witnesses' phase one testimony constituted deficient performance, we reject Weber's claims of ineffective assistance of counsel.

We first address Weber's claim regarding his counsel's failure to object to the officer reading Weber's statements from the presentence investigation report. Specifically, Weber contends that because sec. 972.15, Stats. (1989-90),[10] and *Crowell*, 149 Wis. 2d 859, 440 N.W.2d 352, prohibit a jury from hearing testimony regarding information collected for the presentence investigation report, his counsel was ineffective for not objecting to the probation and parole officer's testimony.

---

[10] Section 972.15, Stats. (1989-90), provides in relevant part:

**Presentence investigation. (1)** After conviction the court may order a presentence investigation.

**(2)** When a presentence investigation report has been received the judge shall disclose the contents of the report to the defendant's attorney and to the district attorney prior to sentencing. When the defendant is not represented by an attorney, the contents shall be disclosed to the defendant.

. . ..

**(3)** The judge may conceal the identity of any person who provided information in the presentence investigation report.

**(4)** After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court.

In *Crowell*, the defendant was allowed to withdraw his guilty plea after the presentence investigation. During the ensuing jury trial, the probation and parole officer who conducted the investigation was allowed to testify about certain statements the defendant made during the presentence interview. The jury subsequently convicted the defendant. *Crowell*, 149 Wis. 2d at 862, 440 N.W.2d at 353-54.

After examining the purposes of a presentence report and sec. 972.15, Stats. (1989-90), the *Crowell* court held that the trial court erred in allowing the officer to testify at trial about the defendant's statements during the presentence investigation. *Crowell* at 872-73, 440 N.W.2d at 358. The court explained that

> the legislature intended sec. 972.15 to restrict the use of the probation and parole officer's testimony about the defendant's statements during the presentence investigation and the presentence investigation report to proceedings after conviction and for the purpose of helping the sentencing court impose a sentence appropriate for that defendant and the public.

*Id.* at 872, 440 N.W.2d at 358.

At first blush, this language appears to support Weber's argument. However, as distinguished from Weber's phase two/mental responsibility proceeding, the focus in *Crowell* was to ensure that the defendant's *adjudication of guilt by the fact finder* was not affected by the presentence investigation report. *See id. See also Rosado v. State*, 70 Wis. 2d 280, 286, 234 N.W.2d 69, 72 (1975); *Gregg v. United States*, 394 U.S. 489, 492 (1969). To prevent any prejudicial information within the report from reaching the fact finder on the issue of the defendant's guilt, the supreme court restricted use of the report to proceedings related to disposition of the case.

Here, the jury selected to try the responsibility phase of the trial learned of the information within the presentence investigation report after a prior jury had already determined Weber's guilt. Thus, the reasons articulated in *Crowell* for limiting access to the report—to avoid prejudicing the fact finder's adjudication of guilt or innocence—no longer existed. Moreover, because a mental responsibility proceeding in Wisconsin constitutes a finding that the defendant is to be excused from criminal responsibility rather than a finding that the defendant was unable to form intent, *State v. Repp*, 122 Wis. 2d 246, 261, 362 N.W.2d 415, 421 (1985), the proceeding *is* conceptually dispositional.[11] Thus, counsel's failure to object was not unreasonable.

Even if we were to hold that sec. 972.15, Stats. (1989-90), and *Crowell* prohibited the officer's testimony in this case, we doubt that we would find counsel's performance to be deficient. Trial counsel testified,

---

[11] The following observation was made in the commentary on the American Law Institute's Model Penal Code, sec. 4.01:

No problem in the drafting of a penal code presents larger intrinsic difficulty than that of determining when individuals whose conduct would otherwise be criminal ought to be exculpated on the ground that they were suffering from mental disease or defect when they acted as they did. What is involved specifically is the drawing of a line between the use of public agencies and public force to condemn the offender by conviction, with resultant sanctions in which there is inescapably a punitive ingredient (however constructive we may attempt to make the process of correction) and modes of disposition in which that ingredient is absent, even though restraint may be involved. To put the matter differently, the problem is to discriminate between the cases where a punitive-correctional disposition is appropriate and those in which a medical-custodial disposition is the only kind that the law should allow.

*State v. Kolisnitschenko*, 84 Wis. 2d 492, 498 n.3, 267 N.W.2d 321, 323-24 (1978) (quoting MODEL PENAL CODE sec. 4.01 commentary at 156 (Tentative Draft No. 4, 1955)).

*inter alia,* that he did not object to the officer's testimony because he saw Weber's statement as admissions against interest and therefore admissible. As we have noted, *Crowell* was a guilt phase trial. This was a mental responsibility phase trial. At the time of this proceeding, no case law had extended sec. 972.15 to a phase two/mental responsibility proceeding. Counsel's belief that Weber's statements to the officer were in the nature of admissions and therefore admissible in a civil proceeding was not an unreasonable interpretation of the statute under then existing case law. We must remember that the test for effective assistance of counsel is not the legal correctness of counsel's judgments, but rather the *reasonableness* of counsel's judgments under the facts of the particular case *viewed as of the time of counsel's conduct.* *Pitsch,* 124 Wis. 2d at 636-37, 369 N.W.2d at 716.

We see another basis for concluding that trial counsel's performance was reasonable. Counsel also testified that he thought the information contained within the presentence report was both good and bad. He stated that a motion *in limine* filed prior to the proceeding sought only to prohibit any reference to Weber's statement that had he not been serving sixty-four years for a previous armed robbery conviction, he would not have attempted the escape. Counsel explained that although other information within the presentence report had negative connotations, statements made during the presentence interview that Weber was high on PCP at the time of the escape because a codefendant had placed PCP in his soda and that his escape attempt was an act of craziness were consistent with the defense. Counsel concluded that he thought the benefits of allowing Weber's version of the escape to be read outweighed the

possible negative effects, given the defendant's burden to affirmatively establish the existence of a mental disease or defect and the fact that six years had elapsed since the phase one proceeding. Viewing counsel's decision not to object as of the time that the decision was made and indulging in the presumption that his decision represented reasonable trial strategy, *Strickland*, 466 U.S. at 689-90, we conclude that counsel's choice was well within the range of professionally reasonable judgments and did not constitute deficient performance.

Finally, we address Weber's other ineffective assistance claim concerning his counsel's pretrial stipulation to allow witnesses from the phase one proceeding to read their former testimony at phase two. Defense counsel explained at the postconviction hearing that because of the lapse in time between the phase one and phase two proceedings and the existence of known favorable witness testimony, he thought the stipulation beneficial. Weber contends, however, that he was prejudiced because the jury was permitted to hear evidence of an offense for which he had been acquitted in phase one—causing injury to a hostage.

We reject Weber's claim that stipulating to the reading of the phase one testimony was ineffective assistance. First, we determine that counsel's conclusion that the stipulation facilitated placing the relevant facts before the jury without the danger of embellishment was entirely reasonable in light of the fact that six years had elapsed between the phase one and two proceedings. Also, at counsel's insistence, certain aspects of the phase one transcripts were either edited or removed to ensure that prejudicial remarks or inadmissible statements contained therein did not affect the jury. Nor do we believe there is any risk that Weber was prejudiced when the jury heard evidence of the causing injury to a hostage

116

offense, particularly when the trial court instructed the jury twice that Weber was acquitted of the offense. We presume the jury followed the instructions given to it by the trial court. *Smith*, 170 Wis. 2d at 719, 490 N.W.2d at 48.

Moreover, we must also bear in mind the unusual posture of this case. The second phase proceeding did not occur until six years after Weber's phase one determination of guilt. Ordinarily, when a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect, the pleas are tried to the same jury in one continuous trial. Section 971.165(1)(c), Stats. As such, one jury ordinarily would hear the entirety of the evidence to which Weber now objects. Counsel's stipulation merely assured that the second jury heard the same evidence.[12]

*By the Court.*—Orders affirmed.

---

[12] Because we reject both of Weber's ineffective assistance of counsel claims, we also reject Weber's claim for a new phase two/mental responsibility trial in the interests of justice.