COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP638**

Cir. Ct. No. **2019ME362**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF N. R. P.:

MARATHON COUNTY,

    PETITIONER-RESPONDENT,

  V.

N. R. P.,

    RESPONDENT-APPELLANT.

       APPEAL from orders of the circuit court for Marathon County: SUZANNE C. O'NEILL, Judge. *Reversed.*

¶1     GILL, J.[1] Noah[2] appeals an order extending his involuntary commitment pursuant to WIS. STAT. § 51.20 and an associated order allowing for the involuntary administration of medication and treatment.  Noah argues that the circuit court erroneously exercised its discretion by admitting hearsay evidence and that the court failed to make specific factual findings to support its determination that Noah is dangerous.  We agree with Noah's arguments.  Accordingly, we reverse the order extending Noah's commitment and the order allowing for the involuntary administration of his medication and treatment.

## BACKGROUND

¶2     Noah was emergently detained in April 2019 after being admitted to a hospital for an overdose of methamphetamine, alcohol, and marijuana.  After a probable cause hearing, a medical examination, and a final hearing, Noah was found to be mentally ill, a proper subject for treatment, and dangerous to himself or others.  Pursuant to WIS. STAT. § 51.20, Noah was involuntarily committed for a period of six months at an outpatient facility.  Noah's commitment was extended multiple times following recommitment hearings in October 2019, November 2020, November 2021, and September 2022, the last of which is the subject of this appeal.

¶3     At the September 2022 recommitment hearing, Marathon County called Dr. John Coates and Dr. Dennis Elmergreen to testify.  Coates stated that Noah exercised his right to remain silent during Coates's examination of Noah and subsequently, Coates had to rely on records and prior physician reports to complete

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

the examination. Coates began to describe an incident from the reports that caused Coates to have safety concerns regarding Noah. Noah's counsel objected to the testimony as hearsay.

¶4    The circuit court overruled the hearsay objection, stating that experts can use hearsay in forming their opinions and can "testify as to the basis of" their opinions. Doctor Coates then described details of the incident, including that Noah was taken into custody after he got into an altercation with his mother and attempted "to run over her boyfriend and then ran from the police." Continuing to rely on information from the reports, Coates described Noah's behavior while he was in jail, including that Noah "continued to make delusional statements" and that Noah was reported to have been "throwing up blood."

¶5    Doctor Coates opined that there was a substantial likelihood that Noah would become dangerous again if treatment were withdrawn because his "behavior would deteriorate further" and he would be unable to care for himself. Coates stated that he diagnosed Noah with schizoaffective disorder and polysubstance use disorder and noted that people diagnosed with schizophrenia "carr[y] an increased risk of death from an unnatural cause," including "suicide or some sort of accidental death." Coates stated that Noah was a danger to others due to him displaying the "aggressive behavior" described above. Coates opined that Noah was not competent to refuse medication or treatment due to him being substantially incapable of applying an understanding of his medication to his mental illness.

¶6    Doctor Elmergreen testified that he did not meet with Noah because Noah did not attend his appointment with Elmergreen. After a review of Noah's records, Elmergreen diagnosed Noah with schizoaffective disorder, psychoactive substance abuse disorder, and post-traumatic stress disorder. Elmergreen then

opined that Noah would constitute a substantial probability of physical harm to himself based upon his "history of violent behavior, non-compliant behavior, delusional paranoia, [and] threatening others." Specifically, Elmergreen stated that Noah would be dangerous if treatment were withdrawn due to a substantial probability of harm to himself or others, because of his impaired judgment, and due to his inability to satisfy his own basic needs. Noah's counsel again raised a hearsay objection, which the circuit court overruled, stating that Elmergreen formulated his opinion based upon a review of the records to which he testified.

¶7      The circuit court found that the County met its burden to extend Noah's involuntary commitment. Regarding Noah's dangerousness, the court stated:

> Both doctors agree that there is a substantial probability that if treatment were withdrawn [Noah] would present as a danger to himself as well as to others.
>
> Both doctors concur that he does meet the dangerousness element as set forth in [WIS. STAT. § 51.20(1)(a)2.a., 2.b., and 2.c.] Specifically, [Noah], if treatment were withdrawn, would present a substantial probability of physical harm to himself as well as to others, and he evidences such impaired judgment if treatment were withdrawn that he would present as a substantial probability of physical impairment or injury to himself or to others.

¶8      The circuit court then entered an order extending Noah's commitment to November 2023 and an order allowing for the involuntary administration of his medication and treatment. Noah now appeals the expired order extending his commitment and the order for his involuntary medication.

## DISCUSSION

¶9     Noah argues that the evidence admitted at his recommitment hearing is insufficient to support the circuit court's finding that he is dangerous. Specifically, Noah argues that the court improperly admitted hearsay evidence in both Drs. Coates's and Elmergreen's testimony. Noah also argues that the court failed to make specific factual findings relating to the specific standards of Noah's dangerousness.

### A.     Mootness

¶10     As an initial matter, the County argues that Noah's appeal of the recommitment order is moot. "Mootness is a question of law we review de novo." *Portage County v. J.W.K.*, 2019 WI 54, ¶10, 386 Wis. 2d 672, 927 N.W.2d 509. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559. An issue is not moot, however, when "direct or collateral consequences of the order persist and vacatur of that order would practically affect those consequences." *Sauk County v. S.A.M.*, 2022 WI 46, ¶19, 402 Wis. 2d 379, 975 N.W.2d 162.

¶11     The County acknowledges that an appeal from an expired commitment order is generally not moot due to the collateral consequences that an involuntary commitment has on an individual's right to own a firearm. *See S.A.M.*, 402 Wis. 2d 379, ¶19. However, the County notes that regardless of whether Noah's

commitment order is reversed, Noah will continue to be prohibited from possessing a firearm due to his prior felony convictions.[3]

¶12 We reject the County's argument that Noah's commitment order has no collateral consequences. Our supreme court has made clear that "a person's mandatory liability for the cost of the care received during a recommitment is a collateral consequence that renders recommitment appeals not moot." *Id.*, ¶24. The County asserts that the cost of care is not applicable here because it "asserts no claim for past treatment costs against" Noah. However, the County appears to ignore that our supreme court rejected a similar argument in *S.A.M.* for two reasons: "First, it is irrelevant whether collection efforts have begun because, regardless, S.A.M. remains liable solely by virtue of [WIS. STAT.] § 46.10(2)'s mandatory language ('shall be liable'). And second, it is enough to overcome mootness when there is the 'potential' for collection actions because of the liability." *S.A.M.*, 402 Wis. 2d 379, ¶25 (citation omitted).

¶13 Even if we were to assume, without deciding, that Noah's appeal is moot, we conclude that an exception to mootness applies.[4] This court may decide

---

[3] The County filed a motion asking this court to take judicial notice of Noah's felony convictions and the dismissal of his involuntary commitment. We granted the County's motion on January 18, 2024, noting that, pursuant to WIS. STAT. § 902.01(2), we can take notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." We also note that WIS. STAT. § 941.29(1m)(a) prohibits a person who has been convicted of a felony in Wisconsin from possessing a firearm.

[4] The County quotes *Portage County v. J.W.K.*, 2019 WI 54, 386 Wis. 2d 672, 927 N.W.2d 509, which states, "That a recommitment order will likely expire before appellate proceedings conclude does not transform a moot issue into a live controversy." *See id.*, ¶29. The County appears to ignore that our supreme court immediately went on to state, "Rather, such concerns may be addressed under the well-established exceptions to dismissal for mootness, particularly, issues capable of repetition yet evading review." *Id.* While the County argues that various exceptions to mootness do not apply here, the County—notably—fails to mention the capable–of-repetition-yet-evading-review exception.

to "address moot issues in 'exceptional or compelling circumstances,'" which include that "the issue is 'capable and likely of repetition and yet evades review.'" ***J.W.K.***, 386 Wis. 2d 672, ¶12 (citations omitted). This exception "is limited to situations involving 'a reasonable expectation that the same complaining party would be subjected to the same action again.'" ***Id.***, ¶30 (alterations omitted; citation omitted).

¶14    There is evidence in Noah's record suggesting that his mental health concerns are ongoing and that he is likely to be subject to a WIS. STAT. ch. 51 commitment again in the future.[5] *See **Outagamie County v. L.X.D.-O.***, 2023 WI App 17, ¶18, 407 Wis. 2d 441, 991 N.W.2d 518, *review denied* (WI May 24, 2023) (No. 2020AP1806). Thus, we conclude the same legal issue will likely arise again for Noah. Further, "given the short duration of commitment orders and the corresponding medication orders—six months for initial commitments and one year

---

Perhaps more importantly, ***J.W.K.*** was decided before our supreme court issued its decisions in ***Marathon County v. D.K.***, 2020 WI 8, 390 Wis. 2d 50, 937 N.W.2d 901, and ***Sauk County v. S.A.M.***, 2022 WI 46, 402 Wis. 2d 379, 975 N.W.2d 162. The ***J.W.K.*** court specified that its holding that J.W.K.'s appeal was moot was "limited to situations where, as here, no collateral implications of the commitment order are raised." ***J.W.K.***, 386 Wis. 2d 672, ¶28 n.11. In other words, ***J.W.K.*** "specifically left open the question whether collateral consequences render an expired commitment not moot." ***D.K.***, 390 Wis. 2d 50, ¶22.

Thereafter, in ***D.K.***, our supreme court held that an appeal from an expired initial commitment order is not moot because the order collaterally subjects the committed person to a continuing firearms ban. ***Id.***, ¶25. Then, in ***S.A.M.***, the supreme court held that an appeal from an expired recommitment order is not moot based on two collateral consequences: the firearms ban and the committee's liability for the cost of care received while subject to the recommitment order. ***S.A.M.***, 402 Wis. 2d 379, ¶27. As explained above, the instant appeal from Noah's recommitment order is not moot due to the second of those collateral consequences—i.e., Noah's liability for the cost of care that he received during his recommitment.

[5] Doctor Coates testified that Noah's "judgment is certainly impaired in view of his ongoing illicit drug use," Noah has a "history of medication and treatment non-compliance," and that Noah's "problems will continue" "if he is not properly medicated."

for recommitments … the issue presented by this appeal is likely to evade review because appellate review may not be accomplished before a commitment order expires."[6] *Id.*

### B. Admission of Hearsay Evidence

¶15 Turning to the merits of the appeal, Noah argues that the circuit court erroneously admitted and relied upon inadmissible hearsay from Drs. Coates's and Elmergreen's testimony regarding Noah's dangerousness. A court's decision to admit hearsay is discretionary, *State v. Stevens*, 171 Wis. 2d 106, 111, 490 N.W.2d 753 (1992), and we will uphold the court's decision if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach," *Appleton Post-Crescent v. Janssen*, 149 Wis. 2d 294, 302-03, 441 N.W.2d 255 (Ct. App. 1989).

¶16 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). Hearsay is inadmissible unless an exception applies. WIS. STAT. § 908.02. Pursuant to our case law, WIS. STAT. § 907.03 allows experts to:

> base an opinion upon data that constitutes hearsay if the data are of a type reasonably relied upon. However, [§] 907.03 is not a hearsay exception. Hearsay data upon which the expert's opinion is predicated may not be automatically admitted into evidence by the proponent and used for the

---

[6] Noah argues that the appeal of the extension of his commitment is not moot because the dismissal of his commitment "has the same effect as the expiration of a commitment order." Noah was unable to cite any authority directly supporting this argument. However, the County has not meaningfully developed an argument that the result of our mootness analysis should differ depending on whether Noah's recommitment order expired or was dismissed. We can discern no reason why the dismissal of Noah's commitment in September 2023—approximately two months before the recommitment order was set to expire—would affect our analysis of the parties' mootness arguments.

> truth of the matter asserted unless the data are otherwise admissible under a recognized exception to the hearsay rule.

*State v. Weber*, 174 Wis. 2d 98, 106-07, 496 N.W.2d 762 (Ct. App. 1993) (citations omitted).

¶17     Noah objected when Dr. Coates began to describe the details of the events that caused Coates to have concerns regarding Noah's dangerousness.  *See supra* ¶3.  Similarly, Noah also objected to Dr. Elmergreen's testimony in its entirety, given that Elmergreen's testimony was based entirely on an examination of Noah's record.  *See supra* ¶6.  The court overruled both hearsay objections, referring to WIS. STAT. § 907.03.  *See supra* ¶¶4, 6.

¶18     The County does not dispute that Dr. Coates's testimony regarding the events, including his pre-arrest conduct and conduct while in jail, and Dr. Elmergreen's testimony as a whole are hearsay, nor does the County argue that an exception to hearsay applies to these contested statements.  Rather, the County asserts that "the circuit court instead relied upon the expert opinions of Doctors Coates and Elmergreen," which it claims the court was permitted to do.

¶19     The County is incorrect.  While WIS. STAT. § 907.03 allows the doctors to rely upon hearsay in order to form their opinions, the hearsay evidence underlying the doctors' opinions does not become admissible automatically under § 907.03.  The County must provide direct evidence of the events that provided a basis for the doctors' opinions, or it must cite an exception to the hearsay rule if it wishes to rely upon hearsay for the truth of the matter asserted.  *See Weber*, 174 Wis. 2d at 106-07; *State v. Klerser*, 2010 WI 88, ¶91 n.9, 328 Wis. 2d 42, 786

N.W.2d 144.[7]  Concluding otherwise would be inconsistent with our supreme court's mandate that a circuit court must make its own specific factual findings of a proposed patient's dangerousness.  *See **Langlade County v. D.J.W.***, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277.  In other words, a circuit court can only rely on competent, admissible evidence to find whether underlying facts supporting a dangerousness opinion actually exist; it cannot use expert opinions as an evidentiary "loophole" to establish the veracity of the underlying hearsay evidence.

¶20    The County did not provide direct evidence of the events cited by the doctors as the basis for their dangerousness opinions, and the circuit court did not rely upon any recognized exception to the hearsay rule in admitting the doctors' testimony regarding those incidents.  Thus, we conclude that the court's admission of and reliance upon the hearsay evidence provided by both doctors constituted an erroneous exercise of discretion.

---

[7] In *State v. Klerser*, 2010 WI 88, ¶91 n.9, 328 Wis. 2d 42, 786 N.W.2d 144 (citations omitted), our supreme court explained:

> There is no dispute that the [circuit] court was permitted to consider [the expert's] opinion and that [the expert's] opinion could be based on inadmissible evidence. But this does not permit the court to rely on the underlying inadmissible evidence. In *State v. Watson*, [227 Wis. 2d 167, 199, 595 N.W.2d 403 (1999),] this court warned that "[t]he danger in permitting inadmissible hearsay to serve as the basis for expert opinions is that hearsay may reach the trier of fact through 'the back door' of cross-examination if experts are asked to explain the bases for their opinions." Professor Daniel Blinka has stated that "it cannot be gainsaid that WIS. STAT. § 907.03 is *not* a hearsay exception".… This rule, applied when the judge is the trier of fact, prohibits the judge (as fact-finder) from relying on the substance of the inadmissible hearsay.

C.    Specific Factual Findings of Dangerousness

¶21    We could end our analysis by concluding that, based on the inadmissibility of the hearsay testimony, there was insufficient evidence to establish Noah's dangerousness under any of the standards set forth in WIS. STAT. § 51.20(1)(a)2.  However, we also analyze another issue that has been occurring with frequency in WIS. STAT. ch. 51 appeals—namely, the circuit court's failure to make specific factual findings tying a patient's behavior to a standard of dangerousness under § 51.20(1)(a)2.

¶22    In *D.J.W.*, our supreme court mandated that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶¶40-45.  This mandate has two requirements:  (1) that the circuit court make specific factual findings regarding the patient's dangerousness, and (2) that the circuit court identify the specific standard of dangerousness on which the recommitment is based.  *See Sheboygan County v. M.W.*, 2022 WI 40, ¶41, 402 Wis. 2d 1, 974 N.W.2d 733 (Hagedorn, J., concurring).  The purpose behind this mandate is twofold.  First, it "provides clarity and extra protection to patients regarding the underlying basis for a recommitment," due to the important liberty interest at stake.  *D.J.W.*, 391 Wis. 2d 231, ¶42.  Second, it clarifies "issues raised on appeal of recommitment orders and ensure[s] the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence."  *Id.*, ¶44.

¶23    In this instance, while the circuit court correctly identified the specific statutory subparagraphs upon which Noah's recommitment was based, the court failed to make any specific factual findings as to why Noah was dangerous.

Regarding Noah's dangerousness, the court only stated that "[b]oth doctors agree that there is a substantial probability that if treatment were withdrawn [Noah] would present as a danger to himself as well as to others" and that "[b]oth doctors concur that he does meet the dangerousness element as set forth in" WIS. STAT. § 51.20(1)(a)2.a.-c.

¶24    Merely identifying the applicable statutory dangerousness standards does not satisfy *D.J.W.*'s mandate, nor does the summary statement regarding the dangerousness standards that both doctors agreed upon. *See Waupaca County v. J.D.C.*, No. 2023AP961, unpublished slip op. ¶¶20-22 (WI App Sept. 14, 2023).[8] These conclusory statements do "little to demonstrate that [the patient's] involuntary commitment was the result of a reasoned consideration of the evidence. Further, [these statements do] little to facilitate appellate review." *Id.*, ¶22.

¶25    Because the circuit court relied upon inadmissible hearsay evidence and failed to comply with *D.J.W.*'s mandate, we reverse the order for Noah's involuntary commitment. Because an involuntary medication order cannot exist without an underlying involuntary commitment, *see* WIS. STAT. § 51.61(1)(g), we also reverse the involuntary medication order.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).